## Kitchen et al. *versus* Smith et al.

1. When a private writing (in this case a lease) is not directly in issue, but comes incidentally in question, its execution may be proved by any competent testimony (in this case that of the lessor) without calling the subscribing witness.

2. The levy of a tax made by the overseers of the poor without the approval of two justices, and not signed or entered on the township books as required by Act of April 15th 1834, §§ 26, 29 (P. L. 515), is invalid, and the tax duplicates thereof are inadmissible in evidence.

3. The positive requirements of a statute cannot be treated as obsolete merely because they have been disregarded in practice.

4. The lessee under an oil lease, who has exclusive possession of the land for the purpose of searching for, producing, storing and transporting oil, has more than a mere license in the land, and may recover from the lessor taxes on the land paid by him under compulsion, under the Act of April 3d 1804, § 6, Purd. 876.

5. In an action by a lessee against a lessor to recover taxes paid by the said lessee and levied on the leased premises the lessor cannot defend on the ground that the lessee has conducted gas away from the land and consumed the same, as such a claim is not within the terms of the Defalcation Act of 1705 (Purd. Dig. 487), and cannot be set up by way of set-off.

6. A reservation by the court of a question as to the admissibility of evidence, which is not finally determined, does not constitute such error as will induce the Supreme Court to reverse, where the record shows that the testimony was submitted to the jury as if no such question had been reserved.

7. It seems that the lessee under an oil lease may not conduct the gas away from the land and appropriate it to his own use.

Kier *v.* Peterson, 5 Wright 357, considered.

November 21st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Common Pleas of *Clarion county:* Of July Term 1882, No. 260.

This was an action of assumpsit by Sylvester S. Smith and Elias W. Snook, doing business as Smith & Snook, against Cyrus Kitchen and Samuel B. Dick, to recover the amount of certain taxes alleged to have been paid by the plaintiffs, for the defendants.

Upon the trial, before JENKS, P. J., the following facts appeared : Samuel M. Whitehill, the owner of some fifty acres of land in Beaver Township, Clarion county, leased the same upon August 2d 1875 to A. Rittenhouse—

"Giving and granting to the party of the second part, his heirs and assigns, the full, free and exclusive possession of said piece of land during said term of fifteen years, for all purposes

[Kitchen v. Smith.]

necessary to develop the same by procuring oil, and taking it therefrom, together with the right to put up and keep tanks thereon for the storage and transportation of oil and to erect thereon any buildings that the party of the second part may require. The party of the second part, his heirs and assigns, shall have the full and free right to subdivide said tract of land into any number of smaller lots and pieces, and sub-lease the whole or any part of said tract of land, and at the termination of this lease or before, to remove all machinery and fixtures thereon."

The lessee further agreed to bore an oil well within four months, and others within certain periods thereafter, to deliver as royalty to the party of the first part one-sixth of all the oil obtained, and to keep books of account for his inspection. Upon August 26th 1875 Rittenhouse assigned the lease to Snook, one of the plaintiffs, who took possession of the land. On May 9th 1876, Whitehill conveyed to one Clover, and he on the same day conveyed to the defendants.

The county, school, road and poor taxes for 1877 and 1878, amounting to $249, being unpaid, the tax collectors made several levies upon the engines, boilers, &c., belonging to the plaintiffs, in order to collect the same. The plaintiffs, having paid the amount due, brought this suit to recover the same.

Samuel M. Whitehill, a witness in behalf of the plaintiff, identified the lease above mentioned and his signature to the same. Marian H. Whitehill was the attesting witness, and her probate of same before a notary public was attached to the instrument which plaintiffs then offered in evidence. The offer was objected to on the ground that the lease was not sufficiently proved. By THE COURT.—This is to prove the deed of the grantor; so far as it binds him and binds his right we admit it; but we do not admit it to prove the covenants of the grantee; we admit it as against the grantor. Exception. (First assignment of error.)

C. S. Wiles, the collector of the poor tax for the year 1877, a witness for the plaintiff, identified the tax duplicate for that year, which the plaintiff offered in evidence. Upon cross-examination, however, he admitted that he had no warrant for the collection of the tax, and that there had been no approval thereof by any two justices of the peace (as required by the Act of April 15th 1834, § 26, P. L. 515). The defendants thereupon objected on the ground that there was no legal tax duplicate and that the duplicate offered was incompetent and irrelevant. THE COURT.—We will admit it, reserving the question. Exception. (Second assignment of error.)

George Snyder, one of the overseers of the poor of Beaver township for the year 1878, testified to the levying for the tax for that year. No entry of the tax was ever made on the township book until it came to be audited nor did the overseers ob-

[Kitchen *v.* Smith.]

tain the approval of two justices of the peace. The plaintiffs offered the tax duplicate in evidence, to which the defendants objected as incompetent and irrelevant. THE COURT. We will receive it for the present, reserving the question that may arise. Exception. (Third assignment of error.)

The court not having disposed of the question thus reserved before submitting the case to the jury the fourth error assigned was to this action of the court.

The defendants then offered to prove that the plaintiffs had possession of and leased as a pump station a portion of the land, and received rent therefor. Objected to as incompetent and irrelevant as a claim for unliquidated damages for trespass could not be set off in this action. THE COURT. We will receive the evidence, reserving the question for final argument. Exception. (Fifth assignment of error.)

The defendants then offered to show that plaintiffs conducted the gas from the premises leased to another property, to the extent of not less than $500 a year, and consumed upon said other premises. Objected to. Objection sustained and offer overruled. Exception. (Sixth assignment of error.)

The defendants requested the court to charge, inter alia, as follows: That the plaintiffs, under the lease given in evidence, are not such tenants of the defendants as are contemplated in the Act of 3d of April 1804, and there can be no recovery.

Answer. We cannot see our course clear in answering this point in the affirmative, and therefore decline to answer it, but refer to the points already stated and our answers thereto. Exception. (Ninth assignment of error.)

Verdict and judgment for the plaintiffs for $249 with interest. The defendants thereupon took this writ assigning for error, inter alia, the rulings of the court upon the offers of evidence and the answer to the defendants' point as above noted.

*Wilson* and *Jenks*, for plaintiffs in error.—The ruling of the court by which the lease was admitted in evidence as to the covenants of the grantor and excluded as to the covenants of the grantee is unprecedented; there is no authority for such ruling.

The poor taxes were irregularly levied, and the duplicates were incompetent evidence under Act April 15th 1834, § 26, P. L. 515, Purd. 1366, pl. 58, and § 29 of same Act, Purd. 1366, pl. 61. The power to tax is purely statutory, and the requirements of the Act must be complied with : Miller *v.* Gorman, 2 Wright 309 ; Pearce *v.* Torrence, 2 Grant 82 ; Hilbish *v.* Hower, 8 P. F. Smith 93 ; Stephens *v.* Wilkins, 6 Barr 260. In nine instances the court admitted evidence " for the present," and failed to dispose of the questions reserved. This practically made the jury the judges of the law as well as the facts. The

[Kitchen *v.* Smith.]

plaintiffs had no right under their lease to conduct the gas from the land and use it in this way: Kier *v.* Peterson, 2 Pitts. 191, s. c., 5 Wright 357. The usage in the oil territory is that if a lessee strikes an oil well accompanied by gas, he may use the gas for fuel, light, &c., on the premises; but if he strikes a dry hole which flows a lot of gas, he is not entitled to take the gas off the premises by pipes for sale to other parties.

This lease is, in its substantial elements, only a right to mine and remove the oil from the land. It is only a lease of an incorporeal hereditament. This is ruled in the case of Funk *v.* Haldeman, 3 P. F. Smith 229. If, then, the plaintiffs held and occupied no more than the lease granted, they were not liable for the taxes and could not recover. If they occupied the land generally they did it in their own wrong and could have no recourse on the defendants for any taxes they, as general occupants, might be compelled to pay.

*Maffett* and *Ross* and *B. J.* and *A. B. Reid*, for the defendants in error.—The probate attached to the lease was regularly authenticated by a notary public who had power under Act 10th August 1864, P. L. 962, Purd. 465, pl. 35; Jordan *v.* Stewart, 11 Harris 247. The provision in the Act of 1834, by which the approval of two justices of the peace is made necessary for the levy to be valid is wholly obsolete. The question cannot at all events be raised here as by §§ 36, 37, of that Act, a remedy was prescribed under which the plaintiffs should have applied to the court for relief: Hughes *v.* Kline, 6 Casey 227; Wharton *v.* Birmingham, 1 Wright 371; Stewart *v.* Maple, 20 P. F. Smith 221. The plaintiffs had a right to use the gas as they pleased: Iddings *v.* Nagle, 2 W. & S. 22; Rank *v.* Rank, 5 Barr 213. Kier *v.* Peterson cited by plaintiffs in error is not an authority for their position. The lease passed a corporeal interest to the lessees: Barker *v.* Dale, 3 Pitts. 190, Circ. Ct. U. S.; Karns *v.* Tanner, 16 P. F. Smith 297, 307. The payment by the plaintiffs was not voluntary and they have a clear right to recover: Caldwell *v.* Moore, 1 Jones 58; Weber *v.* Reinhard, 23 P. F. Smith 370; Henry *v.* Horstick, 9 Watts 413.

Mr. Justice TRUNKEY delivered the opinion of the court, December 30th 1882.

Assuming that the execution of the lease was not properly proved, and that, if proved, it should have been received as evidence of the covenants of both lessor and lessee, the error in admitting it was harmless. In adducing the testimony that followed, in the points submitted and in the charge of the court, the lease was treated as in evidence for each party, for all

[Kitchen *v.* Smith.]

purposes where pertinent to the issue; and in this court it was virtually conceded the lease was genuine. The qualified admission was in response to the defendants' objection. They could have removed the qualification by withdrawing opposition, and as to that they have no ground for complaint. But the lease was admissible upon the testimony of Whitehill. When a private writing is not directly in issue, but comes incidentally in question, its execution may be proved by any competent testimony, without calling the subscribing witness. The plaintiffs' claim was the amount of taxes they had been compelled to pay, although assessed on land owned by the defendants. One of the incidents in their case was the relationship of landlord and tenant. This was not proved by the lease alone; but by that and other evidence. They did not need the lease to show the landowner's liability for the taxes, for the landlord is liable, unless the lease obligates the tenant to pay them. Their claim was founded upon a payment of taxes which the defendants ought to have paid, and any fact showing it was not a voluntary payment was an incident. The lease was admitted on the testimony of the lessor, and no question is raised respecting the sufficiency of the certificate of probate by the subscribing witness.

It appears by the record that all the testimony which was received, was submitted, as if there had been no questions reserved respecting its admissibility. Practically, that disposed of the reservations. After the verdict, to have ruled any testimony incompetent would have called for a new trial. Had any of the testimony been incompetent and of such character as tended to prejudice the minds of the jurors, the error in the receiving of it would not have been cured by ruling it out after the arguments had closed: Railroad Co. *v.* Decker, 82 Pa. St. 119. Although such reservations as those set out in the fourth and fifth specifications seem useless, yet there is no error: they did not interfere with the hearing and considering of the evidence by the jury. Nor did they mislead the counsel, for he took his exceptions when his objections were overruled and before the testimony was heard.

"It shall be lawful for the overseers of the poor of any township, having first obtained the approbation of any two justices of the peace of the county, to lay a rate or assessment, not exceeding one cent in the dollar at one time, upon any real and personal estate within such township:" "Act of April 15th 1834, sec. 26, P. L. 515. Approbation of two justices of the peace lies at the foundation of the power of the overseers to lay a rate or assessment. And if not first obtained, their act in laying a tax is unauthorized by the statute. So the law is written

[Kitchen v. Smith.]

and neither the overseers of the poor nor the courts can treat it as obsolete.

Section 29 of the same Act provides that the overseers of the poor of every township shall cause the rates or assessments laid by them to be entered in books, which they shall sign and deposit with the town-clerk, but if there be no town-clerk the books shall remain with the overseers, and the town-clerk, or overseers, as the case may be, shall permit any person, charged with township rates and levies, to inspect the same at all reasonable times, without any fee or reward. This section is directory of things to follow the lawful laying of rates or assessments, and the validity of the tax does not rest upon them. If overseers neglect to perform the duties directed by this section they may incur severe penalties, although the rates or assessments laid by them, after having first obtained the approval of two justices of the peace, are valid and collectible.

Part of the plaintiff's claim was for poor taxes levied by the overseers of the poor for Beaver township. I. H. Alt, one of the overseers for 1877, called to prove the laying of the rates, in cross-examination testified, that the overseers did not have the approbation of two justices of the peace; also that they made no entry in any book but the duplicate. And George Snyder, one of the overseers for 1878, called for like purpose, testified that the rates for that year were not laid with the approval of two justices of the peace. The testimony, instead of showing that the laying of the rates or assessments was legal, affirmatively showed that the provisions of the 26th section of the Act of 1831 had been disregarded, and it was error to admit the duplicates described in the second and third specifications of error.

The lease vested in the lessees and their assigns, the exclusive possession of the land for the purpose of searching for, producing, storing and transporting oil. They had the right to possession of so much of the land as necessary for said purpose, and were in the actual possession of a considerable part, if not the whole. Their right was not a mere license. The rulings of the court, in the charge and answers to points, were not erroneous as respects the defendants—their sixth point was rightly refused.

None of the other questions raised by the specifications of error need remark, except the right of the lessees to conduct away the gas without liability to account. It is said that the offer to prove that the plaintiffs had so taken the gas and consumed it on other property, was overruled upon the authority of Kier v. Peterson, 41 Pa. St. 357. The defendants' claim for the gas is not under the contract, it is not within the terms of the defalcation Act, and if they have right to recover for it they cannot avail it as set off. Speaking for myself I exclude the

inference that I agree that the lessees have the absolute right of property in the gas. I think the dissenting opinion by Wood-ward, J., Kier *v.* Peterson, supra, is sustained by his reasoning and the authorities therein cited. Gas often escapes in large quantities from oil wells, and is of great value for fuel. It is conducted to towns and extensively used in mills and dwelling houses. Its value may greatly exceed the value of the oil produced. That a tenant, who has only the right to take oil, or salt, may conduct away the gas and appropriate it to his own use, seems to me an arbitrary conclusion.

> Judgment reversed and venire facias de novo awarded.