# Hutcheson *v.* Reash.

*Subrogation of surety—Laches.*

It is not an unvarying and inflexible rule that a surety in a judgment who has paid the debt is from that instant and for all time to be regarded as standing in the shoes of the plaintiff in the judgment.    It is true that he has, eo instanti, the right of substitution but he may lose that right by his laches.

*Subrogation—Statute of limitations.*

A claimant must take steps to enforce his right of subrogation within the period prescribed as a limitation to the enforcement of simple contracts, for this merely equitable right will not be enforced at the expense of a legal one.

*Surety—Subrogation—Statute of limitations.*

Where the surety has done no act, before his claim is barred at law, manifesting his intention to put himself in the place of the original creditor, and thereby subrogating himself to his rights, the remedy is only for money paid, and where he has omitted to bring suit in proper time, or to do some acts equivalent thereto, he cannot afterwards be subrogated to the rights of the creditor.

*Subrogation—Surety—Payment before or after execution the same.*

A surety whose property has been sold by legal process to satisfy the creditors' claim, stands in no better position than one who has paid the debt, perchance to prevent a threatened sale.    One has the same right of subrogation as the other.

*Practice, C. P.—Sci. fa. to revive and motion to set aside execution—Act of* 1887.

Under the Act of May 19, 1887, P. L. 132, where a sci. fa. has been issued by a surety claiming subrogation on a judgment paid by him for the original debtor, the surety has the right to have the question of subrogation tried out on the scire facias he has issued instead of on a motion summarily to set aside the execution.

Argued May 17, 1900.    Appeal, No. 231, April T., 1900, by defendant, in suit of Asa Hutcheson, use of E. K. Adams, against Isaac Reash, from order of C. P. Mercer Co., April T., 1900, No. 15, discharging rule to show cause why execution should not be set aside.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Modified and affirmed.    Opinion by RICE, P. J.

Rule to show cause why execution should not be set aside. Before MILLER, P. J,

### ESSENTIAL FACTS FOUND BY THE SUPERIOR COURT.

Isaac Reash and E. K. Adams made their joint note to Asa Hutcheson with warrant of attorney to confess judgment. In January, 1884, by virtue of an execution issued upon the judgment, the sheriff levied upon all the right, title and interest of Reash and Adams in certain real estate and sold the same for enough to pay the debt, interest and costs. He duly returned that he had applied to the payment of this judgment so much of the proceeds of sale as was required for the purpose, and annexed to his return the receipt of the person to whom the judgment had been duly assigned.

Sixteen years afterwards Adams, without any assignment or order of substitution, caused an execution to be issued on the judgment in the name of the legal plaintiff to his use against Isaac Reash. At the same time he issued a scire facias in the same form. A levy having been made on Reash's personal property, the court granted, upon his application, a rule to show cause why the execution should not be set aside. Adams filed an answer in which he alleged that he signed the note as surety, and that the real estate, by the sheriff's sale of which the debt of Reash, his principal, was paid, belonged exclusively to him, Adams. No denial was made of these allegations, but on the argument of the case in the court below, as well as in this court, Reash contended that the demand was barred by the statute of limitations. The court discharged the rule, and from that order this appeal was taken by defendant.

*Error assigned* was in discharging the rule to show cause why execution should not be set aside.

*W. C. Pettit*, for appellant.—The general principle governing this case is stated in 24 Am. & Eng. Ency. of Law, 322, as follows :

" Limitations.—The general rule is, that the claimant must take steps to enforce his right of subrogation within the period prescribed as a limitation to the enforcement of simple contracts, for this merely equitable right will not be enforced at the expense of a legal one."

The Pennsylvania decisions are very ably reviewed by Mr. Justice GREEN in the case of Allegheny V. R. Co. v. Dickey, 131 Pa. 86.

The same doctrine was applied in Gilson v. Farmers' Bank, 6 Pa. 57, and Stout v. Stout, 44 Pa. 457.

The cases already mentioned are cited with approval in the case of Seibert's Estate, McDowell's Appeal, 4 Pa. Superior Ct. 514, where the principle that the right to subrogation may be lost by laches is reaffirmed. See also Hughes v. Miller, 192 Pa. 365, and Rittenhouse v. Levering, 6 W. & S. 190.

This writ is issued to collect judgment at No. 497, January term, 1879. That judgment is entitled "M. J. Thompson v. Isaac Reash and E. K. Adams." The writ in this case does not follow the judgment, but is issued "M. J. Thompson, now use E. K. Adams, v. Isaac Reash," and there is no such judgment as that. After this lapse of time E. K. Adams cannot thus arbitrarily substitute himself as plaintiff and release himself as defendant. His remedy, if the facts are as he alleges, is an action of assumpsit against defendant for money paid. In that action the defendant will be entitled to all legal defenses. To allow this arbitrary substitution to stand is to deprive the defendant of one of the defenses which the law has given him.

Further, the judgment upon which this writ was issued was over twenty years old when the writ was issued. In the case of Wheelen Bros. v. Phillips, 140 Pa. 33, an attachment execution was issued on such a judgment.

*W. H. Cochran,* with him *J. R. W. Baker,* for appellee.—But appellant pleads the statute of limitations. Had the plaintiff never been paid his money by the surety, and had the plaintiff on February 10, 1900, found that the principal had property wherewith to pay the judgments, it will not be contended that he would have been barred by the statute from issuing fi. fa. and sci. fa. to collect his debt, and if, as has been quoted, the surety who has paid the debt of his principal succeeds to all the rights of the plaintiff as against the principal by operation of law, then the statute of limitations will not run against him any more then it would against the original plaintiff.

The cases cited by appellants are not applicable nor similar to the cases before the court.

OPINION BY RICE, P. J., October 8, 1900 (after finding the facts as set out in the statement of facts):

It is to be noticed that at the time this execution was issued there was nothing on the face of the note or the record to show that Adams was surety for Reash, also that there was nothing on the record to show that the property that had been sold under the prior execution belonged to Adams exclusively. The present execution was issued upon a judgment which, according to the record, apparently had been paid. The allegations that Adams was surety and that the debt was paid by a sale of his property rest in parol. If upon these allegations Adams had brought an action of assumpsit against Reash for money paid, and nothing further had been shown, the court would have been compelled to sustain the latter's plea that the demand was barred by the statute of limitations. Or, if Adams had made formal application to be subrogated to the rights of the plaintiff in the judgment, and Reash had set up the same defense it would have been the duty of the court to refuse the application. The authorities upon this subject are clear and convincing: Fink v. Mahaffy, 8 W. 384; Bank v. Potius, 10 W. 148; Rittenhouse v. Levering, 6 W. & S. 190; Stout v. Stout, 44 Pa. 457; Allegheny R. R. Co. v. Dickey, 131 Pa. 86; Seibert's Est., McDowell's Appeal, 4 Pa. Superior Ct. 514.

It is true, the right of a surety in a judgment to collect it of his principal after the former has paid it is well settled. An actual assignment to the paying surety is not necessary. The 9th section of the act of April 22, 1856, applies to judgment liens on real estate and is intended to adjust and protect the equities of persons holding such liens. It was not designed to settle the rights, nor to prescribe the remedies between surety and principal. "The right of substitution being shown, and the surety having paid the debt, he succeeds by operation of law to the rights of the creditor:" Duffield v. Cooper, 87 Pa. 443. Accordingly it was held, that, while as a general rule an execution must follow the judgment, yet if a surety in a judgment pays the whole amount he may issue an execution against his principal alone in the name of the legal plaintiff for his, the surety's, use without a formal substitution by assignment or otherwise. This, as we understand that case is all that was decided. The decision sustains the regularity of the procedure followed by the surety in the present case but it does not touch the question as to the effect of his delay in asserting his equita-

ble right. But it is urged that the present case is ruled by the general principle enunciated in Fleming v. Beaver, 2 R. 128, Duffield v. Cooper and other cases, namely, that the right of substitution is everything and actual substitution nothing; therefore, the surety having paid the debt succeeds by operation of law to the rights of the creditor. This is conceded as a general proposition but it is subject to qualification in particular cases as an examination of the authorities will show. It is not an unvarying and inflexible rule that a surety in a judgment who has paid the debt is from that instant and for all time to be regarded as standing in the shoes of the plaintiff in the judgment. It is true that he has, eo instanti, the right of substitution but he may lose that right by his laches. If he delays until his legal right to recover on the implied contract of his principal to reimburse him is barred, it is difficult to see upon what equitable principle it can be said that he then has a right to step into the place of the creditor. As was said by ROGERS, J., in Rittenhouse v. Levering, 6 W. & S. 190, " It is inconceivable to me that a court of chancery would undertake to decree a substitution at any distance of time, and after all remedy in a court of law was barred." The general rule is that the claimant must take steps to enforce his right of subrogation within the period prescribed as a limitation to the enforcement of simple contracts, for this merely equitable right will not be enforced at the expense of a legal one. In some of the states, if a surety pays a judgment against himself and his principal, and the fact of his suretyship appears in the record of the judgment, he may enforce the judgment at any time in which the plaintiff might enforce it. But even in those states it is held that if the fact of his suretyship does not so affirmatively appear, as it does not in the present case, the general rule as above stated applies, and he must assert his right of subrogation within the period applicable to simple contracts: 24 Am. & Eng. Ency. of Law, 322. The question was elaborately considered by our Supreme Court in the case last cited, where, apparently, the same arguments were urged as in the present case. We quote from the opinion: " The allegation, as I understand it, is that by payment of the bond the surety is ipso facto subrogated to all the rights of the obligee, and by that operation, without more, he becomes a specialty creditor. . . . The defendants allege that

the right of substitution is everything, and actual substitution is nothing. The general proposition in Fleming v. Beaver is conceded, with certain limitations which we have been compelled to make in subsequent cases." After commenting on some of these cases, the conclusion arrived at was thus stated: " Where the surety has done no act before his claim is barred at law manifesting his intention to put himself in the place of the original creditor, and thereby subrogating himself to his rights, the remedy is only for money paid. Where he has omitted to bring suit in proper time, or to do some acts equivalent thereto, he cannot afterwards be subrogated to the rights of the creditor: " Rittenhouse v. Levering, supra. This statement of the rule was quoted with approval in Allegheny V. R. Co. v. Dickey, 131 Pa. 86, and it has not been overruled or qualified in any other Pennsylvania case to which our attention has been directed. If it has any vigor it surely may be invoked to stay an execution issued by one defendant against his co-defendant upon a judgment which upon the face of the record is satisfied, and has so stood for sixteen years, unless the person issuing the execution can show that at that time he is entitled to maintain an action upon the implied promise of the principal to indemnify him and consequently to be subrogated to the original rights of the plaintiff in the judgment. The suggestion that a surety whose property has been sold by legal process to satisfy the creditor's claim stands in a better position than one who has paid the debt, perchance to prevent a threatened sale, does not seem to us to be well founded. One has the same right of subrogation as the other; neither is subject to the rule as to payment by a volunteer, for a payment by a person who can be compelled to pay, is not voluntary so as to bar him from a right of action against him whose duty it was to pay.

It follows that if no other facts can be shown than those now appearing, the defense must prevail. But here arises a question of practice. Is not the surety entitled to have the question tried out on the scire facias he has issued instead of on a motion to summarily set aside the execution? Under the Act of May 19, 1887, P. L. 132, and the principles enunciated in Baily v. Brownfield, 20 Pa. 41, we are of opinion that this question must be answered in the affirmative. Therefore, although we are unable to concur fully in the reasons given by the learned

judge of the court below for refusing to set aside the execution, we cannot say that there was reversible error in the order. The act of 1887 provides an adequate remedy, which if pursued in the present case will protect the rights of both parties.

The order is affirmed and appeal dismissed at the costs of the appellant, without prejudice, however, to his right to move the court below to stay the execution and to set up the defense now urged upon the trial of the sci. fa. as provided in the Act of May 19, 1887, P. L. 132.

