# Meyer *versus* Horst.

A. was the owner of a saw mill run by water power. B. who owned the land above him over which the stream furnishing power for the mill ran, removed the splash boards from A.'s dam, so as to prevent the water from backing up on his (B.'s) land. In an action on the case by A. for the damage occasioned by the decrease in the power of his mill owing to the diversion of the water, A.'s declaration was inter alia as follows:

"That he . . . . was seised in demesne as of fee, of and in a certain messuage, tenement and tract of land. . . . . with the appurtenances, upon which now is (and from time immemorial,) has been, erected a certain water saw mill, with the appurtenances, and the same A. and all those whose estate he hath in said land and saw mill, with the appurtenances have had, and ought to have the use, benefit and advantage of the water of a certain water course, or stream of water. . . . . which during all time did flow and run and of right ought to have flowed and run, and still of right ought to flow and run, to and into the sawmill aforesaid. . . . ."

At the trial A. offered in evidence an Orphans' Court record showing his title derived through proceedings in partition, and also containing the finding of an inquest appointed in said proceeding, which charged B.'s land with the servitude of allowing the mill owner to back water up on the same, to a certain specified level. This evidence was objected to by B. on the ground that A.'s declaration was upon a prescriptive right, while the Orphans' Court record showed an express grant.

*Held*, That the evidence was admissible on the ground that a prescriptive right to the use of the water was not set up by A.'s declaration, but simply that the mill had been there from time immemorial.

*Held further*, that since the force used in the removal of the splash boards was not the gist of the action, but the consequential damage resulting from such removal, case, and not trespass, was the proper form of action.

[Meyer *v.* Horst.]

May 8, 1884. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GORDON and GREEN, J. absent.

ERROR to the Court of Common Pleas, of *Lebanon County:* Of January Term, 1884, No. 394.

Case, by Jacob Horst against Abraham Meyer, to recover damages for the diversion of water from the plaintiff's saw-mill, by the removal of splash boards from the flood gate of his dam, whereby the supply of water to said mill was diminished.

Plaintiff's declaration was as follows: " . . . . . That whereas he, the said Jacob Horst on the 1st day of June, A. D. 1881, at . . . . in . . . . was seised in his demesne as of fee, of and in a certain messuage, tenement and tract of land containing . . . . . with the appurtenances, upon which now is (and from time immemorial,) has been, erected a certain water saw-mill, with the appurtenances, and the same Jacob Horst, and all those whose estate he hath in said tract of land and saw-mill, with the appurtenances, have had and of right ought to have the use, benefit and advantage of the water of a certain water-course, or stream of water, in the township and county aforesaid, which, during all that time did flow and run, and of right ought to have flowed and run, and still of right ought to flow and run, to and into the saw-mill aforesaid, for supplying the same with water for the working thereof at, to wit: The county aforesaid, and being so thereof seised, the aforesaid Abraham Meyer, not being ignorant of the premises, but maliciously contriving and intending him the said Jacob Horst of the profits and advantages of his saw-mill aforesaid, to deprive, on, to wit: the first day of July, A. D. 1881, and at divers other days and times as well before as after and before the commencement of this suit, at . . . . . did cut down . . . . . two of the splash boards in the waste way or flood gate of the dam erected in said water-course. . . . . . and thereby the water of the water-course, . . . . . aforesaid, from its usual course towards the saw-mill aforesaid, then and there did divert and turn away, so that the said saw-mill, which before that time was able and used to saw, to wit: four hundred feet of lumber in every twenty-four hours, by such diversion of the water, was and is able to saw but to wit: three hundred feet of lumber within the time aforesaid. . . . . . To the damage of the said Jacob Horst. . . . . ." Plea not guilty.

On the trial, before McPHERSON, J., it appeared that the defendant owned a tract of land adjoining plaintiff's, over which the stream supplying plaintiff's mill with power ran its course to said mill. Defendant claimed that the plaintiff unlawfully set the water back upon him and that he removed the splash boards to abate the nuisance.

[Meyer *v.* Horst.]

For the purpose of showing title to the saw-mill property, and to the water right to run the mill, plaintiff offered the record of the Orphans' Court of Lebanon county from which it appeared: that both plaintiff's and defendant's tracts of land formerly belonged to John Graybill, who died in 1840, intestate and seised of the same; that after his death partition of said lands was made by the court, under which proceeding the "saw-mill tract" was awarded to plaintiff (who was the husband of the intestate's daughter) in right of his wife at the valuation and appraisement; that the inquest appointed by the Orphans' Court, in this proceeding, imposed a servitude upon the tract now owned by the defendant, in favor of plain-. tiff's saw-mill tract, in these words: "And the inquest aforesaid on their oaths and affirmations aforesaid do further order and direct that the saw mill tract, owner and owners thereof, marked with the letter——shall be and are hereby authorized to the water right of the creek, and shall have the right to swell the water in the said creek up to a certain stone this day fixed by the said inquest; the said inquest having taken this right and privilege into view in fixing the value of the saw mill tract and the tract marked with the letter 'A' in the annexed Diagram and Inquisition."

The defendant objected to the admission of this record on the following ground: "That thereby the plaintiff seeks to sustain his action by a specific and independent grant of the water privileges, which is not referred to in the declaration at all, that being of a general character" (*i. e.*, for an invasion of a prescriptive right.)

THE COURT. As to what will be the result of the language in which the declaration is couched we have nothing now to do. I think this evidence, under the declaration is admissible. That is the only question before us now. Exception. (1st assignment of error).

The defendant's counsel further objected as follows: "I. object to that part in which reference is made to the right to swell the water in the creek up to a certain stone as the foundation of the special grant of water privilege; and that it is not supported by (*i. e.*, does not support) the declaration, and that it does not agree with it, and that, therefore, it cannot be received in evidence under the narr." Objection overruled. Exception. (2d assignment of error.)

The plaintiff asked the court to charge: "That if the jury believe the testimony of John Strickler, Jacob Graybill and John Graybill, in the matter of fixing the point to which the plaintiff is permitted to swell the water as stated in the return of the inquisition in proceedings in the partition of the real estate of John Graybill, deceased, from whom both plaintiff

and defendant derive their respective titles; and also believe the testimony of W. J. Burnside, surveyor, Andrew Shower, John Strickler and John Graybill, and that the water did not swell beyond said point so fixed by said testimony, prior to the institution of this said suit, then the verdict must be for the plaintiff."

Answer. "The jury must determine, if possible, from all the evidence in the cause, the point fixed by the inquest and referred to in their report. If they can find that point, an accurate level therefrom would determine the extent of the plaintiff's right; if they cannot, the extent of the plaintiff's occupation and enjoyment, as the jury may find it from the evidence, should determine the extent of the plaintiff's right." (4th assignment of error.)

The defendant submitted the following points:

7th. "The plaintiff, having counted for an injury to his alleged prescriptive right to this water privilege, must recover, if he recovers at all, upon that right alone. If he claims an extended privilege by reason of the alleged designation of his water right by the inquest, he should have founded his action upon it."

Answer. "The plaintiff does not claim a right greater than existed when the inquest was taken, and cannot recover except upon the right designated and defined by the inquest." (5th assignment of error.)

1st. "The plaintiff has misconceived his remedy. His action —if his complaint is well founded—should be trespass and not case."

2d. "The injury proved by the plaintiff is, that the defendant removed from his flood-gate, which stood on the land of the former, a splash-board or boards, thereby reducing the height of the dam at that place from five to six inches, whereby the water was diverted from his mill, of which he was then in possession. If this is so, trespass, and not case, is the proper form of action to redress the injury."

The court in its charge to the jury said:

"A question of law will arise for us to determine, and it will be necessary, in order for us to determine it, that you find the following facts:

"If you find for the plaintiff, we will ask you to answer these questions in writing:

"1st. Did the defendant take away the splash-boards from plaintiff's flood-gates?

"2d. Was the supply of water to plaintiff's mill diminished thereby?

"3d. If so, did the diminished flow of water injure the water-right of the plaintiff?

"Upon the facts as found by the jury in answer to the above questions, we reserve the question whether the plaintiff is entitled to recover in this form of action." (6th assignment of error.)

Verdict: "The jurors come into court and do say that they find in favor of the plaintiff the sum of five dollars damages, and answer the three questions submitted to them by the court in the affirmative."

The same day the court entered judgment on the verdict in favor of the plaintiff, and on the above reserved question; whereupon the defendant took this writ, assigning for error the admission of the Orphans' Court record, the answers to plaintiff's and defendant's points as above noted, and the entry of judgment for plaintiff on the question reserved.

*Josiah Funck & Son*, for the plaintiff in error.—The admission of the Orphans' Court record was in effect allowing the plaintiff below to give evidence of an express grant, which, *per se*, without any user, gave him the right to back water upon the defendant's land to a much greater extent than he had ever done before. It was error to admit this evidence, unless the narr., which was upon a prescriptive right, was amended. A right by prescription cannot be supported by evidence of a special particular grant, especially where the latter is more extensive than the former: Good *v.* Mylin, 8 Barr, 51; Darlington *v.* Painter, 7 Barr, 473. The defendant's seventh point was intended to call the court's particular attention to the variance between the evidence of the boundary of the plaintiff's water-power as fixed by the inquest, and that declared upon. The court's answer was not responsive to the point. This is a ground for reversal: Tenbrooke *v.* Jahke, 27 P. F. S., 396; Slaymaker *v.* St. John, 5 Watts, 27. The removal of the splash-boards diverted the water from the plaintiff's mill, and reduced its working capacity by diminishing its power. For this injury *trespass* and not *case* is the proper form of action: Angell on Water Courses, 6th ed., 582, 583; 1 Chitty on Pleading, 11th American ed., *127, 128, 139, 176, 178, 179; Kissecker *v.* Monn, 12 Casey, 315; Wilson *v.* Smith et al., 10 Wend., 324; Dryden *v.* Jepherson, 18 Pick., 391; Cotteral *v.* Cummins, 6 S. & R., 349; Hughes et al. *v.* Stevens, 12 Casey, 323.

*W. M. Derr* (with whom was *Charles M. Zerbe*), for defendant in error.—The proceedings in partition were introduced for a two-fold purpose: first, to prove that the plaintiff was seised in his *demesne as of fee* of, in and to the saw mill and tract of land upon which the mill was located, as averred

[Meyer v. Horst.]

in the declaration; and second, to show the extent, under his right to the water incident to his ownership of the mill property, to which plaintiff was entitled to flow the water upon the lands of defendant. This was done by the plaintiff in the opening of the case and was in support of the averment of title in the declaration alleged. It was not necessary to aver in the declaration the manner in which the plaintiff acquired title; it was sufficient to aver that at the time of the injury he was entitled to the estate to which it was done: Angell on Water Courses, 7th ed., § 405; Hart v. Evans, 8 Barr, 13. The injury to the mill was mediate and indirect, having been caused by the wrongful diversion of the water, which diversion was the result of tearing away the splash-boards. The criterion of *trespass* is force applied directly: Smith v. Rutherford, 2 S. & R., 358; Jordan v. Wyatt, 4 Gratt., 153. Wherever a trespass occasions consequential damage, the trespass itself may be waived and case brought for the consequential damage: Smith's Leading Cases, vol. 1, part 2, 693.

The opinion of the court was filed May 19, 1884.

PER CURIAM. A prescriptive right to the use of the water is not averred in the declaration. It is the saw mill which is declared to have been there from time immemorial. The averment is that the plaintiff below was seised in his demesne as of fee of and in the land, with the appurtenances. It was not necessary to aver in the declaration in what way or manner he acquired title, nor the precise time. It was sufficient to aver the existence thereof in him at the time of the commission of the injury complained of. If force used in the removal of the splash boards was made the gist of the action then there would be reason for holding that case would not lie; but that is not the averment. The substantial grievance alleged is diverting the water of the stream from the mill, whereby its use and profits were lessened. The removal of the splash boards was only the means whereby the consequential damages claimed were produced and sustained. No recovery was sought for or claimed, but these consequential damages. Case therefore may be sustained. The cause was well tried and properly submitted.

Judgment affirmed.